UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LUIS ALVARRACIN, CLAUDY
CHOULOUTE, ISRAEL CRESPO, KAREN
MILLOY and JOHN NUSS,

                       Plaintiffs,                  17-cv-3873 (PKC)

              -against-                        OPINION
                                               AND ORDER

VOLUME SERVICES, INC. a/k/a VOLUME
SERVICES AMERICA a/k/a CENTERPLATE,
SAKS FIFTH AVENUE LLC a/k/a SAKS FIFTH
AVENUE a/k/a SAKS INCORPORATED and
DOES 1-10,

                       Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs are former employees of a restaurant located inside the Saks Fifth Avenue flagship store in New York City (the "Restaurant"). Plaintiffs allege that their 2013 termination from the Restaurant violated the New York City Human Rights Law's ("NYCHRL") prohibition against discrimination based on age, national origin, race and sex. Subject matter jurisdiction is premised on diversity of citizenship.

        Defendant Saks Fifth Avenue LLC ("Saks") moves to dismiss all claims against it pursuant to Rule 12(b)(6), Fed. R. Civ. P. (Docket # 73.) It urges that the First Amended Complaint (the "Complaint") does not plausibly allege that plaintiffs were employees of Saks, and instead alleges only that they were employees of co-defendant Volume Services, Inc. ("Volume Services"). Volume Services is an independent contractor to Saks, and it assumed responsibilities for operating the Restaurant in or about 2012. Volume Services has not filed a motion to dismiss.

In deciding a Rule 12(b)(6) motion, a court's review is limited to the complaint and any documents that are attached or integral to its allegations. Because Saks's motion disputes the factual circumstances of plaintiffs' employment, and because the Complaint contains facts sufficient to nudge plaintiffs' claims over the line from conceivable to plausible, Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009), Saks's motion to dismiss is denied.

BACKGROUND.

In summarizing the Complaint, the Court accepts the truth of plaintiffs' factual allegations and draws every reasonable inference in their favor. Tanvir v. Tanzin, 889 F.3d 72, 81 (2d Cir. 2018).

Saks operated the Restaurant until 2012, when it entered into a Food Services Agreement (the "Agreement") with a subsidiary of Volume Services.[1] (Compl't ¶ 21.) The Complaint incorporates the Agreement by reference, and plaintiffs have filed a partial version of the Agreement. (Compl't ¶ 21 & Docket # 61.) The Agreement states that Volume Services is an independent contractor to Saks, and that all employees of the Restaurant are to be considered employees of Volume Services and not of Saks. (Agrm't §§ 12.1(c), 19.5.)

After Volume Services took over Restaurant operations, plaintiffs transitioned from being "nominal employees" of Saks to nominal employees of Volume Services. (Compl't ¶ 13.) The Complaint alleges, however, that the Agreement gave Saks "ongoing authority over the operations" of the restaurant, and that Saks and Volume Services both acted as plaintiffs' employers. (Compl't ¶ 14, 22.) The Agreement includes provisions that allow Saks to set conduct standards for Restaurant employees and to require Volume Services to reassign Restaurant employees upon demand from Saks. (Compl't ¶ 24; Agrm't §§ 12.1(b), (d).)

---

[1] The Agreement is between Saks and Fifth Dining, LLC, an entity that the Complaint alleges was formed by Volume Services for the purpose of doing business with Saks. (Compl't ¶¶ 19-20.)

Plaintiffs describe themselves as "long-term employees" of the Restaurant. (Compl't ¶¶ 11-12.) They allege that they were terminated in 2013 as part of the "wholesale elimination of the entire work group." (Compl't ¶¶ 12, 31.) They also allege that the 2013 terminations largely affected employees who were over the age of 40 and of Hispanic descent. (Compl't ¶¶ 29-30.)

Plaintiffs allege that they were terminated as part of "shared goal" by Saks and Volume Services "of projecting a more youthful look that was also skewed racially and gender-wise." (Compl't ¶¶ 32-33.)

RULE 12(b)(6) STANDARD.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Legal conclusions are not entitled to the presumption of truth, and a court assessing the sufficiency of a complaint disregards them. Iqbal, 556 U.S. at 678. Instead, the Court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. The Complaint must include non-conclusory factual allegations that "'nudge[ ]'" its claims "'across the line from conceivable to plausible.'" Id. at 680 (quoting Twombly, 550 U.S. at 570).

"For the purpose of a motion to dismiss under Rule 12(b)(6), the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Allco Fin. Ltd. v. Klee, 861 F.3d 82, 98 n.13 (2d Cir. 2017).

DISCUSSION.

The NYCHRL makes it unlawful for employers to discriminate on the basis of age, race, color, national origin or gender, among other characteristics. N.Y.C. Admin. Code § 8-107. The NYCHRL does not define the term "employer," and New York courts have concluded that four factors guide the determination of whether a defendant qualifies as an employer: the selection and engagement of the employee; the payment of salary or wages; the power of dismissal; and the power of control over the employee's conduct. Griffin v. Sirva, Inc., 29 N.Y.3d 174, 186 (2017). Of these four factors, the "greatest emphasis [is] placed on the alleged employer's power 'to order and control' the employee in his or her performance of work." Id.

Similarly, to determine whether a defendant is a joint employer under the NYCHRL, courts apply an "immediate control" test, which considers whether the defendant "had immediate control over the other company's employees," specifically as to "setting the terms and conditions of the employee's work." Brankov v. Hazzard, 142 A.D.3d 445, 445-46 (1st Dep't 2016) (quotation marks omitted). Relevant factors include common authority over hiring, firing, discipline, pay, insurance, supervision and employee records. Id. at 446. However the "right to control the means and manner of the worker's performance is the most important factor. If such control is established, other factors are then of marginal importance." Id. (quotation marks omitted).

The Complaint and the text of the Agreement contain facts sufficient to plausibly allege that Saks had a right of control over Restaurant employees. The Agreement contains a provision that gives Saks the power to set rules of conduct for Restaurant employees:

> [Volume Services] agrees that its associates and agents will comply
> with and observe all rules concerning conduct of its associates at the

[Restaurant] that Saks may from time to time impose upon Saks' associates at the [Restaurant] . . . . [Volume Services] shall not be deemed to be in material breach of this Subsection 12.1(d) in the event that, despite [Volume Services's] commercially reasonable efforts to insure compliance, one or more of its associates or agents fails to comply with any such rules and regulations on an isolated basis, as long as Saks is promptly notified and the failure of compliance is remedied expeditiously.

(Agrm't § 12.1(d).) The Agreement separately provides that if Saks notifies Volume Services "of a reasonable and significant objection to any of [Volume Services's] associates," a 30-day period would commence "to cure the deficiencies noted by Saks. If such deficiencies have not been cured to the reasonable satisfaction of Saks within such time period, the assignment of such associate to the [Restaurant] shall be discontinued and a suitable person shall be substituted . . . as soon as practicable." (Agrm't § 12.1(b).) The Agreement also provided that Volume services would assign a general manager and senior chefs from among its employees, with "each such assignment being subject to prior consultation from a Saks Representative . . . ." (Agrm't § 4.3(d).)

In short, the Agreement gives Saks the power to set rules of conduct for Restaurant employees that are consistent with the rules that Saks sets for its own employees. Volume Services is required to enforce compliance with Saks's standards and to notify Saks if a Restaurant employee fails to meet them. Saks is permitted to make "reasonable and significant" objections to Volume Services's employees and to demand their replacement. The power given to Saks under the Agreement plausibly support plaintiffs' claim that Saks played a role in "setting the terms and conditions of the [plaintiffs'] work." Brankov, 142 A.D.3d at 445-46.

Saks points to other portions of the Agreement, which gives Volume Services supervisory authority over the Restaurant and defines Restaurant employees solely as employees of Volume Services and "not deemed employees of Saks for any reasons." (Agrm't §§ 4.3(c),

12.1(c).) Saks also relies on an affidavit submitted by a Volume Services officer, who states that plaintiffs were employees of Volume Services and that Saks had no role in hiring, disciplining or terminating the Restaurant employees. (King Aff't ¶¶ 5-8.) At the Rule 12(b)(6) stage, however, the Court draws every reasonable inference in favor of the plaintiffs, and affidavits or documents not integral to the Complaint are not to be considered. See, e.g., Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir. 1985).

Because the Agreement gives Saks the authority to set and enforce conduct standards and the authority to demand employee reassignment, the Complaint plausibly alleges that Saks was a joint employer of the plaintiffs. Saks's motion to dismiss is therefore denied.

CONCLUSION.

Saks's motion to dismiss is DENIED. (Docket # 73.) The Clerk is directed to terminate the motion.

SO ORDERED.

     P. Kevin Castel
United States District Judge

Dated: New York, New York
     May 30, 2018